UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ARMSTRONG PUMP, INC.,

                    Plaintiff,

         v.                                                    **DECISION AND ORDER**
                                                                 10-CV-446S
THOMAS HARTMAN d/b/a THE HARTMAN
COMPANY and OPTIMUM ENERGY, LLC,

                    Defendants.

_____

# I. INTRODUCTION

In this action, commenced on May 28, 2010, Plaintiff Armstrong Pump, Inc.

("Armstrong") is suing Defendant Hartman, the owner of three patents to which Armstrong

has a license, for breach of contract and anticipatory breach of contract related to its

intended sale of the three patents to Defendant Optimum Energy. Optimum Energy is

sued for tortious interference with contract. Now before the Court are: (1) Hartman's

motion to dismiss this action for lack of personal jurisdiction, improper venue, and failure

to state a claim for relief; (2) Optimum Energy's motion to dismiss for lack of personal

jurisdiction and failure to state a claim; and (3) Armstrong's motion for a temporary

restraining order and preliminary injunction. For the reasons that follow, Defendants'

motions are denied to the extent they seek dismissal based on lack of jurisdiction and

improper venue, Plaintiff's motion for a temporary restraining order is granted, and the

motions to dismiss for failure to state a claim and motion for a preliminary injunction will be

addressed in a further decision.

## II. BACKGROUND

The following facts are taken from Armstrong's Complaint, the attached License Agreement, and affidavits and exhibits submitted by the parties.

Thomas Hartman, d/b/a The Hartman Company, is a professional engineer with a principal place of business in Georgetown, Texas. He is licensed in several states, but not in the state of New York. In the late 1990s, Hartman began to apply for and obtained the three patents at issue here, which relate to methods, systems, and devices that improve the efficiency in chilled water cooling systems used in commercial and industrial buildings. The patents disclose methods for sequencing the chillers, pumps, fans, and other components in a loop HVAC system in order to optimize system operating efficiency (the "Hartman Loop Technology" or "Loop Patents").

Armstrong Pump, Inc. is a New York corporation founded in 1934 with a principal place of business in North Tonawanda, New York. A significant part of its business involves the development and manufacture of HVAC chilled water and boiler water systems, pumps, and other components ("chilled water products"). Armstrong is a subsidiary of S.A. Armstrong Ltd. ("SAA"), which is located in Toronto, Ontario. (Docket No. 15-2, Ex. A; Docket No. 25-2, Ross Aff., ¶ 1.) SAA's CEO, Charles Armstrong, its Director of Marketing, Brent Ross,[1] and its Manager of Strategic Projects, Peter Thomsen, are located in Toronto, Ontario.

---

[1] Ross, who is employed by SAA, serves as Director of Core Products (responsible for marketing) for both SAA and Armstrong.

Hartman and Brent Ross first met in Minneapolis, Minnesota, in or about 2000, at the annual meeting of the American Society of Heating, Refrigeration and Air-conditioning Engineers ("ASHRAE"). At that time, Hartman had been issued the first of the three patents at the heart of this suit. The remaining two patents were issued in 2001.

In June 2003, Ross contacted Hartman by email to inquire about meeting with him at an ASHRAE meeting in Kansas City. Thereafter, Hartman corresponded with both Ross and Thomsen about their interest in using his inventions in Armstrong's products. All three met at an ASHRAE meeting in Anaheim, California in 2004, after which Hartman sent them a proposed licensing agreement for the Loop Patents. All of Hartman's calls, faxes, and emails relative to negotiations were directed to Toronto, and, other than the ASHRAE meetings discussed, all in-person negotiations occurred in Toronto.

The License Agreement executed on February 4, 2005, is between Hartman and SAA's New York manufacturing subsidiary, Armstrong. The Agreement's term is until the expiration of the last of the patents to expire—on or about May 8, 2020.[2] (Agreement Recital A and § 4.) In exchange for agreed upon fees, the Agreement provides to Armstrong a license:

> to make, have made, use, sell, and otherwise distribute factory packaged chilled water systems, pumping and/or other mechanical products that incorporate the Licensed Technologies at the factory implementation level, and to use and otherwise practice the Licensed Technologies in Licensed Products.

(*Id.* § 2.1.) Hartman agrees to be diligent in referring potential applications for new chilled

---

[2]  The term of a patent generally is 20 years from the date on which the application was filed. The Court takes judicial notice of the May 8, 2000 filing date for U.S. Patent No. 6,185,946 published by the United States Patent and Trademark Office.

water equipment he learns of to Armstrong (*id.* § 3.3(e)), promote Armstrong's marketing of the Licensed Technologies during the life of the Agreement, including joint marketing efforts (*id.* § 12.8), provide email support to Armstrong and its clients (*id.* § 3.4 and Ex. A), and provide consulting services to Armstrong in connection with product development and support, including travel as necessary (*id.* § 12.7).

At about the same time Armstrong was negotiating with Hartman, Defendant Optimum Energy, a Washington company with its principal place of business in Seattle, Washington, also was negotiating with Hartman. It sought rights to the Hartman Loop Technology for its business, which involved the provision of energy saving services, monitoring services, and redesign services in connection with preexisting systems. As a result, the License Agreement contains the following carveout:

> [Hartman] shall not be precluded from licensing the Licensed Technologies or the Licensed Patents to Optimum Energy Corporation or others for the purpose of incorporating the Technologies into products excluding those that include the manufacture or assembly of pumps, chillers, towers, chilled water plant controls or pumping or chiller systems that could compete with [Armstrong's] intended product offering.

(*Id.* § 3.2(b)).

Since the License Agreement was executed, Optimum appears to have expanded its business model and now manufactures and installs control systems on chilled water systems in direct competition with Armstrong. Hartman now intends to sell to Optimum all patents identified in the License Agreement. Armstrong is seeking to halt that sale. According to Armstrong, the impending sale is contrary to explicit provisions in the License Agreement, including, *inter alia*, a provision precluding Hartman from granting a license for "factory implementation" of the Licensed Technologies to any third party (*id.* § 3.3(a)), a

provision granting Armstrong a right of first refusal on improvements to the Licensed Technologies during the term of the License Agreement (*id.* § 8), and Hartman's provision of consulting services regarding the Licensed Technologies during the term of the Agreement (*id*. § 12.7).

## III. DISCUSSION

Prior to considering Armstrong's request for injunctive relief, the Court must determine whether Armstrong has sufficiently demonstrated personal jurisdiction over the nonresident defendants, and whether dismissal for improper venue is warranted.

**A.    The Motions to Dismiss for Lack of Personal Jurisdiction**

In deciding a motion to dismiss for lack of personal jurisdiction, a district court has discretion to proceed on written submissions or conduct an evidentiary hearing. Daniel v. Am. Bd. of Emergency Med., 988 F. Supp. 127, 201 (W.D.N.Y. 1997) (citation omitted). In responding to a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that the Court has jurisdiction over the defendants. Wik v. City of Rochester, 07-CV-6541, 2008 U.S. Dist. LEXIS 92032, at *36, (W.D.N.Y. Nov. 13, 2008). Where, as here, the Court relies solely upon pleadings and affidavits, the plaintiff need only made a *prima facie* showing of facts establishing jurisdiction. Xerox Corp. v. Arizona Digital Prods., Inc., 08-CV-6480, 2009 U.S. Dist. LEXIS 84-15, at *24 (Sept. 14, 2005). "Those documents are construed in the light most favorable to plaintiff and all doubts are resolved in its favor. CutCo Indus. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

However, a different standard applies to Armstrong's request for a preliminary

injunction. Where such preliminary relief is sought, a *prima facie* showing does not suffice and a plaintiff's response to a jurisdictional challenge must "adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." Visual Scis., Inc. v. Integrated Commc'ns, Inc., 660 F.2d 56, 59 (2d Cir. 1981) (citation and internal quotation marks omitted); *see also*, Applewhite v. Sheahan, 08-CV-6045, 2009 U.S. Dist. LEXIS 114872, at *2 (W.D.N.Y. Feb. 19, 2010).

In a diversity action such as this, district courts look to the forum state's jurisdictional statutes to determine whether jurisdiction exists over nonresident defendants. DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001). Here, Armstrong alleges that Hartman has "transacted business" in this District by negotiating a license agreement with a New York corporation, granting rights to the New York corporation, and executing an agreement with a New York choice of law provision. (Complaint ¶ 5.) Thus, it appears Armstrong is relying on N.Y. C.P.L.R. § 302(a)(1),[3] which provides, in pertinent part:

> [A] court may exercise personal jurisdiction over any non-domiciliary, or his executory or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to provide goods or services in the state; . . . .

(McKinney's 2010). Two requirements must be met to establish jurisdiction under this provision: (1) the defendant must have transacted business within the state, and (2) there must be a "substantial nexus" between the transaction and the claims asserted. Sole

---

[3] Hartman argues in its motion papers that Armstrong has not made a *prima facie* showing of personal jurisdiction under § 302(a)(1). Armstrong contests that argument, and does not assert any other statutory basis for jurisdiction in its response.

Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC, 450 F.3d 100, 103 (2d Cir. 2005). A nondomiciliary "transacts business" by purposefully availing himself of the privilege of conducting activities within New York, thereby invoking the benefits and protection of its law. Cutco Indus., 806 F.2d at 365 (citations omitted). The "transacts business" determination is based on the totality of the circumstances including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendants] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22-23 (2d Cir. N.Y. 2004) (quoting Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (internal citations omitted) [alteration added]). No one factor is dispositive and other factors may be considered. *Id*.

Armstrong alleges that Optimum Energy has "transacted business" in this district, and that it has an office in New York, and had or is seeking a sales representative in New York. Like Hartman, Optimum presumed Armstrong's reliance on § 302(a)(1). In response to Optimum's motion, Armstrong contends that personal jurisdiction also is proper pursuant to § 302(a)(2) and (3), and refers to Optimum's "continuous and substantial business throughout New York." (Docket No. 24 at 3.) The relevant portions of these provisions allow for personal jurisdiction over a nondomiciliary which:

> 2. commits a tortious act within the state . . .; or

> 3. commits a tortious act without the state causing injury to person or property within the state . . . if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state . . . .

N.Y. C.P.L.R. § 302(a).

If a state statute allows the exercise of personal jurisdiction over either defendant, the court must then determine "whether the defendant has sufficient contacts with the forum state to satisfy the requirements of due process." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 244 (2d Cir. 2007).

The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. For purposes of this initial inquiry, a distinction is made between "specific" jurisdiction and "general" jurisdiction. Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum"; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts."

The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice"--that is, whether it is reasonable under the circumstances of the particular case. The Supreme Court has held that the court must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction

-8-

unreasonable."

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567-68 (2d Cir. 1996) (internal citations omitted).

### 1. __Defendant Hartman__

Applying the four "transacts business" factors here, it is undisputed that Hartman has a long-term, ongoing contractual relationship with a New York corporation. Hartman did not negotiate or execute the contract in New York. However, Brent Ross attests, and Hartman does not dispute, that in 2008, while at an ASHRAE meeting in New York, he met with Ross, Thomsen, and Armstrong customer contacts for the purpose of promoting and selling Armstrong products that implement the Hartman Loop Technology. (Docket No. 25-2 at 2 ¶ 4; Docket No. 30-2.) The License Agreement contains a New York choice of law provision (Agreement § 12.10), which the Second Circuit has found is "a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law." Sunward Elecs., 362 F.3d at 23 (citation omitted). Finally, the License Agreement requires that any notices or reports due Armstrong be delivered to its address in North Tonawanda, New York. (Agreement § 12.9.) Taking all of these factors into consideration, this Court concludes Armstrong has made a *prima facie* showing that Hartman purposefully availed himself of the privilege of conducting activities within New York such that he "transacted business" within the meaning of C.P.L.R. § 302(a)(1). The fact that he may have availed himself of that privilege sparingly does not compel a contrary conclusion in light of the Second Circuit's query as to whether, "in an age of e-mail and teleconferencing, the absence of actual personal visits to the forum is

any longer of critical consequence." Agency Rent A Car, 98 F.3d at 30.  There can be no doubt that there is a substantial nexus between Armstrong's claims for breach of contract and anticipatory breach and Hartman's transaction of business.  His contract with a New York entity is at the heart of the present dispute.  *Id*. at 31 (citing Hoffritz for Cutlery, Inc. v. Amajac, Ltd, 763 F.2d 55, 59 (2d Cir. 1985)).

Applying the factors set forth in Metropolitan Life Ins., this Court finds that the exercise of personal jurisdiction over Hartman satisfies constitutional due process. Hartman's entry into a long-term relationship to provide patent rights and related services to a New York corporation, through a contract containing a New York choice-of-law provision, is sufficient to meet the minimum contacts requirement for specific jurisdiction. Hartman reasonably could have anticipated being haled into a court in New York for an alleged breach of that contract.

The exercise of personal jurisdiction over Hartman also  comports with "traditional notions of fair play and substantial justice."  The first reasonableness factor to consider, the burden on Hartman, a Texas resident, arguably weighs against the exercise of jurisdiction.  However, any argument relative to travel and litigation costs is eased by the conveniences of modern communication and transportation, and thus provides him only weak support.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 129-30 (2d Cir. 2002).  As for the second factor, New York, as the home of Armstrong, has an "unquestionable interest" in adjudicating the claims asserted against Hartman.  *Id.* at 130.  The interests of Armstrong, a New York entity located in New York, will be served by proceeding in a convenient forum.  Witnesses and evidence are likely to be located in New York, Ontario, Texas, and Washington, and so this is a neutral factor.  This case does not

appear to involve substantive social policies, and this factor also is neutral.  As two of the three non-neutral factors tip in favor of the exercise of jurisdiction, the Court finds the reasonableness standard is met.

For the reasons stated, Armstrong has made a *prima facie* showing of facts establishing jurisdiction, and Hartman's motion to dismiss for lack of personal jurisdiction is denied.  Furthermore, Armstrong has adequately demonstrated a reasonable probability of ultimate success upon the question of jurisdiction over Hartman, and therefore meets the standard necessary for consideration of its preliminary injunction motion.

### 2.    Defendant Optimum Energy

Optimum concedes that it maintains an office and sales representative in New York.  In addition, Armstrong provides affidavits and documentation relative to Optimum's HVAC installations at six facilities in New York State.  Armstrong contends that at least one such installation includes the sale of a control device in direct conflict with Armstrong's rights under the License Agreement.

In reply, Optimum provides the following information about its business activities in New York.  Optimum currently has forty-four employees, twenty-nine of which are located in Washington State.   It has five employees in California, four in Texas, two in Massachusetts, and one each in Pennsylvania, New York, Connecticut, and Maryland.  The New York sales representative, whose territory includes New York and northern New Jersey, has been employed in New York since 2008.  Optimum has leased shared office space in New York since September 2009.  Prior to the commencement of this lawsuit, Optimum sold five Loop Technology projects in New York State.   Its New York sales

accounted for 1% of total revenues in 2008, 18.9% in 2009, and 8.6% in the first half of 2010. Optimum's New York sales representative was not involved in negotiating Optimum's license agreement with Hartman or its proposed purchase of the Loop Patents, nor was the proposed patent purchase negotiated in New York. On these facts, Optimum characterizes its presence in New York as small, recent, and limited.

As previously noted, Armstrong argues that personal jurisdiction is proper under C.P.L.R. § 302(a)(1), (2), and (3). Section 302(a)(2) provides for jurisdiction over a nondomiciliary who commits a tortious act in New York. New York law strictly construes the requirement that the tort be committed while the defendant is physically present in the state. Ziegler, Ziegler & Assocs. LLP v. China Digital Media Corp., 05-CV-4960, 2010 U.S. Dist. LEXIS 84506, at *23-24 (S.D.N.Y. July 13, 2010) (citations omitted). Armstrong alleges that Optimum tortiously interfered with the License Agreement by negotiating with Hartman for the purchase of the Loop Patents. Reading the Complaint in a light most favorable to Armstrong, there is no allegation that any of those negotiations occurred in New York. Accordingly, Armstrong has not made out a *prima facie* case under § 302(a)(2). For substantially the same reasons, Armstrong has not sufficiently alleged that its tortious interference claim arises from any of Optimum's business activities in New York. Thus, Armstrong has not made a *prima facie* showing under § 302(a)(1) either.

Section 302(a)(3) provides for jurisdiction over a nondomiciliary that commits a tort outside New York, causing injury in New York, so long as the defendant regularly does or solicits business, or engages in any other persistent course of conduct in the State. A defendant entity is "subject to personal jurisdiction with respect to any cause of action, related or unrelated to its New York contacts, if it does business in New York not

occasionally or casually, but with a fair measure of permanence and continuity." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (internal quotation marks omitted) (defining the circumstances pursuant to which a defendant can be subject to general personal jurisdiction under CPLR § 301). New York courts have focused on several factors to support a finding that a defendant is doing business, including "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." Landoil Res. Corp. v. Alexander & Alexander Servs. Inc., 918 F.2d 1039, 1043 (2d Cir. 1990). Solicitation alone will not ordinarily show that a defendant is "doing business" in New York, but where combined with evidence that the defendant "engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist." Id. at 1043-44.

Here, Armstrong has alleged a tort by Optimum and consequent harm to its New York manufacturing operation. Prior to the commencement of this action Optimum had an office and an employee in New York, solicited business, and sold goods and services in the state. It has done so without interruption since 2008. Armstrong's allegations, along with the affidavits and documentation submitted, make a sufficient *prima facie* showing of facts establishing general jurisdiction over Optimum.

Optimum's conceded New York activities also are of sufficient substance to establish the minimum contacts necessary to satisfy constitutional due process. Optimum's characterization of its New York business notwithstanding, the allegations and documentation suggest "continuous and systematic general business contacts" in New York State. For the same reasons as discussed for Defendant Hartman, the exercise of

personal jurisdiction here comports with "traditional notions of fair play and substantial justice."

Thus, Armstrong has set forth facts sufficient to make a *prima facie* showing of personal jurisdiction over Optimum, and its motion to dismiss on this basis is denied. Armstrong's preliminary injunction motion seeks to enjoin Hartman only. Therefore, there is no need to consider whether Armstrong has made a showing sufficient for an injunction with respect to Optimum.

**B.     Hartman's Motion to Dismiss for Improper Venue**

In its Complaint, Armstrong alleges that venue is proper pursuant to 28 U.S.C. §1391(a), (b), and/or (c). Only Hartman moves to dismiss for improper venue. The venue statute provides, in relevant part, as follows:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial party of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Hartman conclusorily argues that venue in the Western District of New York is improper and dismissal warranted because: the defendants do not reside in the same state, and neither resides in New York;  a substantial part of the events giving rise to this action occurred in Texas, Ontario, and Washington; and neither he nor Optimum are subject to personal jurisdiction in New York and Armstrong cannot allege there is no other district where this action can be brought. In support, Hartman relies on one case where, after finding a defendant was properly dismissed for lack of personal jurisdiction, the district

court further concluded that venue was improper as to that same defendant.  Dabiri v. Federation of States Med. Bds. of U.S., Inc., 08-CV-4718, 2009 U.S. Dist. LEXIS 25068 (E.D.N.Y. Mar. 25, 2009).

   In response to Hartman's motion, Armstrong apparently concedes that § 1391(a)(1) is inapplicable, but it presses for a finding of proper venue under the remaining provisions. It cites no authority, and neither Hartman nor Armstrong set forth the standard applicable to this motion.

   When venue is challenged, the burden is on the plaintiff to show that venue in the district is proper.  City of New York v. Cyco.net, Inc., 383 F. Supp. 2d 526, 543 (S.D.N.Y. 2005).  On a motion to dismiss under Rule 12(b)(3):

> [t]he court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits.  When an allegation is so challenged[, a] court may examine facts outside the complaint to determine whether venue is proper.  The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.  If the defendant[ ] prevail[s] on [its] Rule 12(b)(3) motion, the court has the power to dismiss or transfer the case to any district in which it could have been brought. See 28 U.S.C. § 1406(a).

United States EPA ex rel. McKeown v. Port Auth., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001) (internal citations and quotation marks omitted) [alterations added].

   Under Section 1391(a)(2), venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred." But, § 1391(a)(2) contemplates that venue can be appropriate in more than one district, and permits venue in multiple judicial districts as long as a substantial part of the underlying events took place there.  Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005) (citing Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005).  To determine venue, district courts should first identify

the nature of the claims and the conduct that allegedly gives rise to the claims, and then determine whether "significant events or omissions material to [those] claims . . . have occurred in the district in question." Gulf Ins. Co., 417 F.3d at 357 [emphasis omitted]. Venue must be properly established over each defendant for each cause of action. Cyco.net, Inc., 383 F. Supp. 2d at 543.

In evaluating venue in a breach of contract action, "courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." Id. "The [§] 1391(a)(2) standard may be satisfied by as little as a single communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." DLJ Mortg. Capital, Inc. v. Cameron Fin. Group, Inc., 07-Civ. 3746, 2007 U.S. Dist. LEXIS 89598, at *15 (S.D.N.Y. Dec. 4, 2007) (citation and internal quotation marks omitted).

Here, Hartman avers that all negotiations for the License Agreement occurred outside of New York. (Docket No. 15-4 ¶¶ 6-16.) Armstrong appears to concede this is so.[4] Neither the Complaint nor the affidavits state where the License Agreement was executed, but Armstrong concedes that this, too, occurred outside New York. (Docket No. 25 at 8.)

As for performance under the License Agreement, Hartman avers that he never visited the Armstrong facility in New York, never sent money or goods to New York, and

---

[4] Brent Ross's suggestion that, because he spent time in North Tonawanda during the time period in which negotiations occurred, it is possible that he may have called or emailed Hartman from New York (Docket No. 25-2 at 3-4 ¶ 6), is not sufficient to raise a factual dispute requiring resolution in Armstrong's favor.

*believes* he did not provide any services in New York related to the Agreement. (Docket No. 15-4 ¶¶ 14, 16.) Thus, he concludes no part of his performance occurred in this district. (*Id*. ¶ 17.)

However, the Complaint alleges that, over the years and in accordance with the License Agreement, Hartman has provided assistance and technical support regarding Armstrong's product design and system development. (Docket No. 1 ¶ 40; Agreement § 12.7.) Armstrong does not contest Hartman's averment that he has never traveled to its North Tonawanda facility, which suggests that the consultations may have occurred by telephone or email, or elsewhere. Nonetheless, considering the Complaint, including the attached License Agreement, in the light most favorable to Armstrong, the allegations and submissions sufficiently establish that Hartman was to provide and did provide product development consulting services to Armstrong, a design and manufacturing entity located in this district.[5] The License Agreement requires that Armstrong issue a purchase order to Hartman for such services, and that Hartman submit related invoices to Armstrong for payment.

The Complaint further alleges that Armstrong has met all "royalty payments" required under the License Agreement (Docket No. 1 ¶ 23; Agreement §§ 3.1 and 3.2, providing for quarterly and minimum annual license fees relating to application of the Loop Technologies), and that it was to be offered a right of first refusal on future Loop Technology improvements (Docket No. 1 ¶ 36; Agreement §8.) Hartman does not address these ongoing obligations, communications, and payments, and does not suggest that they

---

[5] Hartman's stated "belief" that he did not provide services in New York is not a factual averment that contradicts the Complaint.

occurred, or were to occur, other than between himself and Armstrong's North Tonawanda, New York location. In sum, for purposes of this motion to dismiss, Armstrong's uncontroverted allegations are sufficient to establish that a substantial portion of the License Agreement was to be performed and was performed in the Western District of New York. *See* Sea Tow Servs. Int'l, Inc. v. Pontin, 472 F. Supp. 2d 349, 364 (E.D.N.Y. 2007) (performance by defendants occurred, in part, in New York where agreement required Florida defendants to mail payments to New York plaintiff); Matera v. Native Eyewear, Inc., 355 F. Supp. 2d 680, 686 (E.D.N.Y. 2005) (fact that plaintiff's obligations were performed within the district sufficient to establish that venue is proper); Schomann Int'l Corp. v. Northern Wireless, Ltd., 35 F. Supp. 2d 205, (N.D.N.Y. 1999) (venue proper in New York where Iowa defendant's consulting services to New York plaintiff were related to installation in Republic of Georgia, but purchase orders, payment requests, and status reports were forwarded to plaintiff's New York office).

Finally, Hartman asserts that no part of the alleged breach—*i.e.*, his negotiations to sell the Loop Patents to Optimum—occurred in New York. (Docket No. 15-4 ¶ 17.) Armstrong disputes this and urges that the breach and the resulting harm occurred in the Western District of New York, where Armstrong resides. It identifies the breach as Hartman's having compromised, through the proposed sale to Optimum, various rights in the Licensing Agreement that run to Armstrong. These include a prohibition against granting rights to Optimum that would allow it to compete with Armstrong's products, the grant to Armstrong of a right of first refusal on improvements, and the right to Hartman's unique consulting services for Armstrong's product development. (Agreement §§ 3.2(b), 8, 12.7.) Hartman confirms that he notified Armstrong of his intent to sell the Loop Patents

to Optimum.  (Docket No. 15-4 ¶ 23.)

Hartman's communication to Armstrong relative to the alleged breach can fairly be said to have occurred, at least in part, in this district.  Furthermore, Armstrong holds rights in this district which it claims are imperiled by Hartman's intended sale.  In this Court's view, alleged interference with rights held and exercised in this district is a breach that occurs in this district.  Based on this and the conclusion that a substantial portion of the License Agreement was to be performed in this district, the Court concludes that venue is proper as to the claims against Hartman.

As previously noted, Optimum has not objected to venue relative to its tortious interference claim.  Armstrong's Complaint and submissions do not contain sufficient information about Optimum to render an independent determination on the propriety of venue.  What is clear is that Armstrong's claim against Optimum is factually intertwined with its claims against Hartman.  Given the propriety of venue over the Hartman claims, the Court may exercise "pendant venue" over the factually related tortious interference claim. The discretionary exercise of pendant venue here will serve judicial economy and convenience of the courts, and avoid piecemeal litigation. Cyco.net, Inc., 383 F. Supp. 2d at 544 (citing Rodriguez v. Chandler, 641 F. Supp. 1292, 302 (S.D.N.Y. 1986), *aff'd*, 841 F.2d 1117 (2d Cir. 1988)).

For the reasons stated, Hartman's motion to dismiss for improper venue is denied.

## C.    Temporary Restraining Order

Armstrong has moved, pursuant to Fed. R. Civ. P. 65, for a temporary restraining order and preliminary injunction against Defendant Hartman, enjoining and restraining him

from selling to Optimum the patents covered by the License Agreement between Armstrong and Hartman.

Upon review of Armstrong's Complaint, its motion for a temporary restraining order, the supporting affidavits, and memorandum of law, the Court finds, at this juncture, that Armstrong has demonstrated: (1) it will suffer irreparable injury absent injunctive relief; and (2) a likelihood of success on the merits of its contract claims against Hartman and tort claim against Optimum. Accordingly, the motion for a temporary restraining order is granted on the terms set forth in the below Order.

## IV. CONCLUSION

For the reasons stated above, Defendant Hartman's motion is denied to the extent that it seeks dismissal on the grounds of lack of personal jurisdiction and improper venue. Defendant Optimum Energy's motion is denied to the extent it seeks dismissal for lack of personal jurisdiction. Plaintiff Armstrong's motion for a temporary restraining order is granted. Its application for a preliminary injunction will be addressed in a further decision. Defendants' requests for dismissal on the ground of failure to state a claim for relief will be addressed along with the application for preliminary injunction.

## V. ORDER

IT HEREBY IS ORDERED that Defendant Hartman's Motion to Dismiss (Docket No. 15) is DENIED to the extent it seeks dismissal for lack of personal jurisdiction and improper venue, and is held in abeyance to the extent it seeks dismissal for failure to state a claim;

FURTHER that Defendant Optimum Energy's Motion to Dismiss (Docket No. 17) is DENIED to the extent it seeks dismissal for lack of personal jurisdiction, and is held in

abeyance to the extent it seeks dismissal for failure to state a claim;

FURTHER that Plaintiff Armstrong's Motion for a Temporary Restraining Order (Docket No. 18) is GRANTED pending the earlier of a determination on Armstrong's Motion for a Preliminary Injunction, or the expiration of fourteen (14) days from the date of this Order (unless otherwise extended an additional fourteen (14) days under Fed. R. Civ. P. 65);

FURTHER that Defendant Hartman hereby is restrained from selling to Optimum the patents covered by the License Agreement between Armstrong and Hartman;

FURTHER that a hearing date on the preliminary injunction will be set by further Order, if necessary; and

FURTHER that the remaining arguments in Defendants' Motions to Dismiss will be addressed in conjunction with the Motion for Preliminary Injunction.

SO ORDERED.


Dated:   September 9, 2010
         Buffalo, New York

                                      /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                      Chief Judge
                                      United States District Court