UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ARMSTRONG PUMP, INC.,

                Plaintiff,

                                                                                 **Hon. Hugh B. Scott**

        v.

                                                                                 10CV446S

                                                                                  **Order**

THOMAS HARTMAN d/b/a THE
HARTMAN COMPANY and
OPTIMUM ENERGY LLC,

                Defendants.

       This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 74, Order of Aug. 25, 2011; see also Docket No. 13, initial Referral Order of July 19, 2010). The instant matter before the Court is the motion of defendant Optimum Energy LLC (hereinafter "Optimum Energy") to compel (Docket No. 99[1]). Responses to this motion were due by May 7, 2012, with any replies due by May 14, 2012, and the motion deemed submitted (without oral argument) on May 14, 2012 (Docket No. 98).

       After defendants separately answered (Docket Nos. 10, 11) the original Complaint, plaintiff moved (without opposition) for leave to amend the Complaint (Docket No. 48; see Docket No. 54, Order granting leave; Docket No. 55, Am. Compl.), alleging claims for breach of

---

[1]In support of its motion, Optimum Energy submits its attorney's declaration with exhibits, Docket No. 99; and its Reply Memorandum, Docket No. 108. In opposition, plaintiff submits its attorney's declaration with exhibits and Opposition memorandum, Docket No. 107.

contract and tortious interference with a contract (Docket No. 55, Am. Compl. ¶¶ 42-51, 52-60). On March 22, 2011, defendants again separately answered the Amended Complaint (Docket Nos. 56, 57). Optimum Energy's Answer asserted counterclaims against plaintiff (Docket No. 57, ¶¶ 78-132), wherein Optimum Energy claims that it is the successor in interest in plaintiff's license agreement (id. ¶¶ 85-86) and alleged that plaintiff committed multiple breaches of that agreement in installing the patented technology in an impermissible manner (id. ¶¶ 87-105). After seeking a declaratory judgment as to the terms of the licensing agreements of plaintiff and Optimum Energy (id. ¶¶ 106-12), Optimum Energy alleged counterclaims for violation of the license agreement by plaintiff selling as a stand alone product one of the patented technologies on a particular project, outside the scope of that license (id. ¶¶ 113-24). Further, Optimum Energy sought another declaratory judgment as to scope of plaintiff's licensing agreement relative to that one purported stand alone product (id. ¶¶ 129-32). Optimum Energy also asserted counterclaims for patent infringement by plaintiff selling the technology as a stand alone product (id. ¶¶ 125-28).

     Plaintiff then moved for leave to amend its Answer to counterclaims asserted by Optimum Energy (Docket No. 97), which was granted (Docket No. 109). Plaintiff was to file and serve its Second Amended Answer, by May 21, 2012 (see Docket No. 111, [Second] Amended Ans.); defendants could reply to this Answer by June 5, 2012, and a Scheduling/Status Conference was set for June 26, 2012, before the undersigned (Docket No. 109). That conference later was reset for July 11, 2012, at 11 am (Docket No. 110). Familiarity with the Order on plaintiff's motion for leave to amend (Docket No. 109) is presumed.

## BACKGROUND

This is a contract dispute commenced in this Court under diversity jurisdiction (see Docket No. 1, Compl.[2] ¶¶ 1-4). Plaintiff claims that it has pioneered products for customers in residential, commercial and industrial markets, developing chilled water products (Docket No. 55, Am. Compl. ¶¶ 8-10). In the late 1990s, Hartman applied for and obtained patents in methods, systems, and devices that improve the overall efficiency of chilled water cooling systems, the "LOOP Patents" (id. ¶ 12). Plaintiff entered into negotiations with Hartman to license the LOOP Patents to use in plaintiff's chilled water products (id. ¶ 13). After two years of negotiations, plaintiff signed a license agreement with Hartman (id. ¶ 15, Ex. A), with negotiated exclusive rights to plaintiff to develop chilled water products incorporating the licensed technology (id. ¶¶ 16, 33-39), and right of first refusal to any improvements in the three LOOP Patents (id. ¶¶ 17-18).

Meanwhile, Hartman negotiated with Optimum Energy for the latter to obtain rights to the LOOP Patents (id. ¶ 24). Since Optimum Energy was a non-manufacturing entity, Hartman carved out limited rights in its license agreement (id. ¶¶ 27-29, Ex. B). Optimum Energy later went into manufacturing and now directly competes with plaintiff (id. ¶¶ 29, 30). Optimum Energy sought an assignment of the LOOP Patents and Hartman agreed to proceed with the sale of those patents despite Hartman's licensing agreement with plaintiff (id. ¶ 31). Hartman entered into a Patent Purchase Agreement with Optimum Energy on February 9, 2010, and later entered into an amended agreement and other ancillary agreements (id. ¶ 40, Ex. C).

---

[2]Plaintiff is a New York corporation, while defendant Optimum Energy is a Washington limited liability company, and defendant Hartman is a Texas corporation, Docket No. 1, Compl. ¶¶ 1-3; Docket No. 55, First Am. Compl. ¶¶ 1-3.

Plaintiff alleges that Hartman breached its License Agreement by transferring the rights to Optimum Energy (id. ¶¶ 43-46). Plaintiff also claims that Optimum Energy tortiously interfered with that License Agreement with Hartman (id. ¶¶ 52-60).

*Optimum Energy's Motion--Docket No. 99*

On April 20, 2011, Optimum Energy served its First Set of Requests for Production of Documents and Things (Docket No. 99, Optimum Energy's Atty. Decl. ¶ 7, Ex. A), seeking agreements between plaintiff and Hartman; documents concerning the negotiation of the Armstrong Pump licensing agreement; communication between Hartman and plaintiff and between Optimum Energy and plaintiff; documents concerning the Optimum Energy licensing agreement; other documents concerning Optimum Energy; communication between plaintiff and Flack & Kurtz and between plaintiff and Ben McLaughlin and A.R. Jensen Associates concerning Optimum Energy, the two licensing agreements, the Binney Street projects, and the MCOA project; documents concerning the Erieview project; communications; documents concerning specific e-mails Optimum Energy identified between Hartman, Brent Ross, Peter Thomsen, Brett Gaviglio, Charles Fletcher, Nathan Rothman, and CDB Canadian and U.S. catalogue holders; documents concerning a November 2, 2010, e-mail from McLaughlin and Jonathan Dickenson; documents concerning the sale, installation and servicing of IPC 11550 by plaintiff; advertising of the IPC 11550 by plaintiff; representations of the IPC 11550 by plaintiff to its customers or potential customers; and documents concerning plaintiff's document retention policy or procedure (id., Ex. A, Requests Nos. 1-16, attached Exs. A-F, G)[3]. Plaintiff responded

---

[3]According to the definitions contained in the document demand, the Binney Street and MCOA projects are projects in Cambridge, Massachusetts, while the Erieview project is an office building and mall project in Cleveland, Ohio, and the IPC 11550 is plaintiff's control system

on May 20, 2011, with objections to production of any request, but stating (notwithstanding those objections) that it would "produce responsive, non-privileged documents . . . in its possession, custody, or control, to the extent such documents exist, and can be found after a reasonably diligent search" (id. ¶¶ 8-9, Ex. B).

Optimum Energy now moves to compel plaintiff to provide full and complete responses to Optimum Energy's first set of document production requests (Docket No. 99, Notice of Motion; id., Optimum Energy's Atty. Decl. ¶ 2, Ex. A), arguing that almost a year after being served with the requests plaintiff has not provided full and complete production (Docket No. 99, Optimum Energy's Atty. Decl. ¶ 4). Optimum Energy now only seeks to compel production of documents plaintiff agreed to produce, reserving the right to move to compel objected items (id. ¶¶ 6, 3).

On July 1, 2011, Optimum Energy's counsel wrote to plaintiff's counsel seeking clarification on certain of the objections but plaintiff's counsel has not responded to this letter (id. ¶¶ 10-11, Ex. C (Optimum Energy's counsel's July 1, 2011, letter)). Optimum Energy claims that plaintiff has not served "a single document to Optimum until October 28, 2011," then producing an e-mail file of an Armstrong Pump employee, Brent Ross (id. ¶ 12, Ex. D). On February 2, 2012, plaintiff produced 285 pages of additional documents, publicly filed documents in another lawsuit and literature authored by codefendant Thomas Hartman (id. ¶ 13, Ex. E). On February 17, 2012, Optimum Energy's counsel again wrote to plaintiff's counsel to renew its request for the balance of the responsive documents (id. ¶ 14, Ex. F), noting the paucity of materials served (id. ¶¶ 15-18, Ex. F). Optimum Energy termed this February 17th letter as its

---

product that incorporates the patents at issue in this case, Docket No. 99, Ex. A, at 3.

good faith attempt pursuant to Rule 37(a) to resolve this dispute short of motion practice (id. ¶ 19, Ex. F), among other previous attempts to obtain these materials (id. ¶ 19, Ex. G).

On February 29, 2012, plaintiff did produce almost a thousand additional pages of documents (id. ¶ 20, Ex. H), and on March 30, 2012, plaintiff produced about sixteen hundred more pages of documents (id. ¶ 20, Ex. I). Optimum Energy, however, termed these added documents to be merely additional correspondence files from Brent Ross and did not include materials from other plaintiff's employees and officers (id. ¶ 21). Optimum Energy concludes that it has not received full compliance with its document demands (id. ¶¶ 21-22), specifically Requests Nos. 1, 8, 9, 10, 12, 13, and 16 have not been addressed and there has been only partial production for Requests Nos. 2, 3, 4, 5, 6, 7, 11, 14, and 15 (id. ¶ 23). Optimum Energy believes that this partial and delayed production is part of plaintiff's strategy to delay this case until the underlying patents expire (id. ¶ 24). Optimum Energy filed this motion on April 13, 2012 (Docket No. 99).

Plaintiff responds describing its discovery requests to Optimum Energy and Optimum Energy's production, in December 2011, of CD disks containing documents (Docket No. 107, Pl. Atty. Decl. ¶¶ 2-4, Exs. A, B). Plaintiff searched these disks for a particular e-mail from Nathan Rothman of Optimum Energy to Charles Armstrong of plaintiff, dated April 16, 2010, but that e-mail was not found. Plaintiff claims that that e-mail is responsive to three of Optimum Energy's requests. (Id. ¶ 5.) Plaintiff notes further production made on April 19, 2012, and May 4, 2012, of 11,099 pages of documents to Optimum Energy (id. ¶ 8, Ex. D), as well as earlier production on February 2, February 29, and March 31, 2012 (id. ¶ 9). The Armstrong Pump employee

managing collection of the documents took a leave of absence and "abruptly separated from the company" this spring (id. ¶ 12).

Plaintiff complains that this motion to compel was filed while the Court had held discovery in abeyance (Docket No. 107, Pl. Memo. at 1). Plaintiff believes this Court's holding the Scheduling Order (see Docket No. 43) in abeyance pending resolution of its motion for leave to amend (Docket No. 116) in effect also stayed discovery and makes Optimum Energy's present motion premature (Docket No. 107, Pl. Memo. at 2-5). Alternatively, if that motion is deemed timely, plaintiff also wants an opportunity to move to compel (id. at 5-7) and that its production is not deficient at this point of the discovery schedule (id. at 7) and limited to its pending objections to Optimum Energy's overly broad (to plaintiff) requests (id. at 7-9). Plaintiff claims that its production parallels Optimum Energy's (id. at 9). Optimum Energy continues to collect documents, so this motion is unnecessary (id. at 10). Plaintiff concludes that no costs should be awarded to Optimum Energy for making this motion (id. at 11).

In reply, Optimum Energy argues that this Court held in abeyance the discovery deadlines and did not stay discovery (Docket No. 108, Optimum Energy Reply Memo. at 1). It reiterates that this motion seeks production of materials plaintiff said it was to produce, so objections regarding overbreadth and burdensomeness are irrelevant (id.). It notes that plaintiff served its discovery responses after Optimum Energy filed its motion (id. at 2-3). Even though it has plaintiff's latest production, Optimum Energy still argues for compelling additional discovery from correspondence from 24 other Armstrong Pump employees (id. at 4 & n.6).

7

**DISCUSSION**

I.     Applicable Standards

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007). Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A).

II.     Application

    A.     Motion to Compel

Plaintiff is relying upon Optimum Energy's production to provide sources for documents responsive to Optimum Energy's demands (see Docket No. 107, Pl. Atty. Decl. ¶ 5). It also argues that the holding in abeyance of the Scheduling Order (Docket Nos. 79, 106) meant that discovery has been stayed until a new discovery deadline is set (Docket No. 107, Pl. Memo. at 3).

Holding a Scheduling Order deadline in abeyance and staying the activity subject to the deadline, however, are two different things. This Court only held in abeyance the deadlines for discovery and subsequent activities in this case, given the potential changes in the claims if

plaintiff's motion were granted. Plaintiff's position is akin to the status of discovery at the start of an action; barring a stipulation or Court Order, parties are not to commence discovery until after they had conducted a Rule 26(f) conference, Fed. R. Civ. P. 26(d)(1). Absent an Order expressly staying discovery, there is no provision that holds discovery in abeyance pending resetting the deadline for its completion.

This action started as a contract dispute that now has been amended to assert patent claims and defenses; a specialized patent schedule needs to be included in an Amended Scheduling Order which is to be discussed on July 11. But this did not necessarily mean that discovery (in particular for the claims and defenses unaffected by the amendment) was halted until that schedule is set.

To be explicit, this Court **did not stay discovery**. The Order initially holding the schedule in abeyance was filed on September 19, 2011 (Docket No. 79), in response to counsel's joint request that the Scheduling Order "be suspended" until the then-pending motions surrounding new patent claims were decided (letter of Paul Perlman, Esq., to Chambers, Sept. 19, 2011, at 1, 2). That request did not ask to stay discovery or proceedings while these motions were pending. Whatever the parties may have intended by the Scheduling Order's "suspension," this Court merely held the Scheduling Order deadlines in abeyance until new ones could be set consistent with the claims then pending in this action (Docket No. 84, Report & Rec. at 14; Docket No. 109, Order, at 14-15; <u>see also</u> Docket No. 110, Order). Since that date, the parties have exchanged discovery and made requests for discovery without anyone raising the fact that the Scheduling Order was held in abeyance or that discovery was "stayed".

Thus, defendant Optimum Energy's motion to compel is not stayed or untimely. Motions to compel need not await the completion of discovery or the approach of the motion to compel deadline in a Scheduling Order. If a party fails to produce or raises an objection the opponent disagrees with, the movant can seek to compel production.

On the motion to compel, plaintiff produced over 10,000 pages of documents in the face of the motion to compel, but only the correspondence and e-mail files of three or four employees and officials of that company. Optimum Energy seeks more within the subset of discovery sought that plaintiff (despite its objections) was willing to produce. Optimum Energy has not detailed how this latest burst of production addressed particular outstanding requests and plaintiff, in producing, did not identify how these documents responded to particular requests. The Court was not provided the produced materials and such filing is unnecessary. Optimum Energy's motion to compel is **granted**. Note, plaintiff is not to engage in piecemeal production of materials it has located that are responsive to Optimum Energy's unobjectionable requests. For example, responsive documents from correspondence of other plaintiff's employees should be produced, if it has not been produced already.

Plaintiff has not filed a motion for a Protective Order. Plaintiff has noted objections to this motion to compel based on overly broad or burdensome production by identifying specific requests that are burdensome (Docket No. 107, Pl. Memo. at 8, 10) due to the number of potential custodians of the documents sought. The documents sought in <u>this</u> motion are those that plaintiff could produce and Optimum Energy reserved the right to file a subsequent motion to compel as to the objected documents. As for the objection that numerous potential custodians

have the documents sought, plaintiff could produce one set of the documents and identify those who had (or by title might have) a copy of the document in their possession.

Still available to plaintiff is its objections and its own motion to compel.

B.  Discovery Sanctions

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A). Procedurally, under Rule 37(a)(2)(B) and this Court's Local Civil Rule 37, the movant needs to make a statement of good faith efforts made to resolve a discovery dispute before making motions to compel.

> Under Rule 37(a)(5)(A), if the motion to compel is granted, the Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising such conduct, or both of them to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

Fed. R. Civ. P. 37(a)(5)(A) (effective Dec. 1, 2007).

If the opponent to a motion to compel produces in the face of that motion, this Court "must" after giving notice and affording an opportunity to be heard, award sanctions of the reasonable expenses incurred by the movant in making the motion, Fed. R. Civ. P. 37(a)(5)(A).

Given that Optimum Energy prevails (from plaintiff, at a minimum, producing some documents while this motion was pending), under Rule 37(a)(5)(A), this Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the

11

motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Therefore, Optimum Energy shall submit an application to recover its reasonable motion expenses within ten (10) days of entry of this Order, or by **June 21, 2012**; plaintiff may respond to this application, including arguing whether good faith efforts short of this motion were attempted; why non-disclosure was substantially justified or point to other circumstances that would make imposition of an award unjust; as well as responding to the sanction sought by Optimum Energy.  Plaintiff's response is due within twenty-one (21) days of entry of this Order, or by **July 2, 2012**, and the application would be deemed submitted.

## CONCLUSION

Based upon the above, defendant Optimum Energy LLC's motion to compel (Docket No. 99) production of documents is **granted**.  As a result, plaintiff is to complete its discovery as described above forthwith.  Plaintiff shall submit an application of her reasonable motion expenses within **ten (10) days of entry of this Order, or by June 21, 2012**.  Plaintiff may respond to this application within **twenty-one (21) days of entry of this Order, or by July 2, 2012**.

SO ORDERED.

                                                  */s/ Hugh B. Scott*
                                                  Hon. Hugh B. Scott
                                            United States Magistrate Judge

Dated: Buffalo, New York
       June 11, 2012