UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ARMSTRONG PUMP, INC.,

                        Plaintiff,

v.                                              **DECISION AND ORDER**
                                                              10-CV-446S

THOMAS HARTMAN, and OPTIMUM
ENERGY LLC,

                        Defendants.

---

## I. INTRODUCTION

Plaintiff, Armstrong Pump, Inc. ("Armstrong"), and Defendant Optimum Energy LLC ("Optimum"), seek claim construction for various claims found in three patents filed by Thomas Hartman. To that end, the Honorable Hugh B. Scott, United States Magistrate Judge, held a Markman hearing and issued the now-pending Report and Recommendation ("R&R"), which construes and defines various claims.

Presently before this Court are objections from each party. For the following reasons, the R&R is accepted in large part, but set aside as to some matters.

## II. DISCUSSION

### A.   Standard of Review

This Court reviews specific objections to reports and recommendations *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). When only a general objection is made to a portion of a magistrate judge's report and recommendation, district courts subject that portion of the report and recommendation to a clear error review. Fed. R. Civ. P. 72(b)(2)-(3). District courts, however, are not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed.

Ianniello v. Hartford Life & Acc. Ins. Co., No. 10-CV-370, 2012 WL 314872, at *1 (E.D.N.Y. Feb. 1, 2012) (citing Thomas v. Arn, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Ultimately, this Court may accept, reject, or modify any of the Magistrate's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**B.    Armstrong's Objections**

Generally, Armstrong's objections take one of two forms: it either objects on the ground that (1) Judge Scott assigned some claim terms an unnecessary special construction when the claim term has an ordinary meaning; or it objects on the ground that (2) Judge Scott failed to perform "indefiniteness analysis" and, relatedly, his construction of some claim terms refers only to a functional limitation – it fails to disclose an adequate structure.

Reviewing them *de novo*, this Court finds Armstrong's objections unavailing on each of the claim terms to which they apply.

As for the first type of objection, this Court finds no error in Judge Scott's clarification of some claim terms despite the fact that they may be commonly understood by those with ordinary skill in the art. As noted by the Magistrate, further clarification may help the jury understand these terms. And, although Armstrong cites authority supporting the proposition that terms such as these sometimes do not *need* further construction, it offers no authority for the proposition that these claims *cannot* be specially defined. To the contrary, even cases relied on by Armstrong demonstrate that in some circumstances, commonly understood terms require construction. See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd., 521 F.3d 1351, 1361–62 (Fed. Cir. 2008) ("A determination that a claim term

'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."). Finally, and perhaps most importantly, Armstrong does not argue that the constructions at issue are wrong or misleading. Accordingly, this group of objections is dismissed.

In Armstrong's second group of objections, which comprises two separate but related forms of objection, it argues:

> First, because of the deficiencies of the specifications of the patents-in-suit, the R&R does not identify a structure for the means-plus-function limitations as required by law or perform an indefiniteness analysis for any "structure" that is disclosed. Second, the R&R adopts constructions for the means-plus-function limitations which recite functions rather than specific structures identified in the specifications.

(Armstrong's Objections, at 1; Docket No. 139.)

After a careful analysis, this Court finds that each of the disputed means-plus-function limitations adequately reference disclosed structures. To the extent that Judge Scott did not, this Court explicitly adopts the identification of the disclosed structures in the comprehensive exhibit to Defendants' claim-construction brief. (See Docket No. 125-3.) Further, this Court finds that those structures are sufficiently definite and are adequately incorporated into the various constructions.

Finally, this Court has considered objections that do not fit neatly with these two groupings but finds no error in the Magistrate Judge's Report.

**C.     Optimum's Objections**

Optimum identifies five terms that it argues require revision. Armstrong agrees that the first three claim terms identified by Optimum require revision; though the parties' proposed constructions differ.

**1.     Centrifugal Chiller**

The R&R defines a "centrifugal chiller" as a "chiller whose compressor uses a centrifugal pump." The parties agree that a centrifugal chiller does not have a pump. Accordingly, the construction will be revised to read: "a chiller whose compressor uses a centrifugal chiller." This aligns with both parties proposed construction.

**2.     Acquiring an indication of power**

The R&R defines this term as "the amount of power used to operate a device." But this construction omits the act of "acquiring." Both the parties agree that this term construction requires revision. Although the parties disagree as to the correct construction, this Court will construe the term as follows: "acquiring the information regarding the amount of power used to operate a device."

**3.     Cooling Tower**

The R&R defines "cooling tower" as "a structure that receives chilled water exiting a condenser and cools it for recirculation through fan-assisted evaporative cooling." This appears to be a simple clerical error, as elsewhere Judge Scott correctly noted that heated – not chilled – water is involved here. The word "heated" is thus substituted for "chilled" in this term construction.

### 4. Predetermined Procedure

The R&R defines "predetermined procedure" in '946 Claim 2 as "a stepwise logic or decision making process that compares the average operating differential pressure across the operating compressors to the natural efficiency curve for the overall system and guides the common controller to a decision whether to add or to shed a chiller."

Optimum points out that "average operating differential pressure" and "natural efficiency curve for the overall system" are not strictly comparable and that the procedure can include comparing other criteria. It proposes that the term does not need separate construction. Armstrong does not dispute this. Accordingly, based on the R&R's earlier constructions from '946 Claim 1, this claim term will not be defined further.

### 5. Means for measuring a power draw/ Means for calculating the motor speed based on the measured driving motor power draw

The R&R construes "means for measuring a power draw" as "a device that measures the total electrical energy usage by a compressor motor over a given amount of time." It also construes "Means for calculating the motor speed based on the measured driving motor power draw" as "the use of formulas, algorithms, or similar predetermined logic to convert total electrical energy usage by a compressor motor into an indirect measurement of motor speed."

Optimum argues that these definitions are "unduly narrowing because the measuring power draw, as found in Optimum's proposed construction, should include any instantaneous measurement of power supplied, not only total energy over time." Aside from its objection that these terms are indefinite, Armstrong does not dispute the validity of Optimum's proposed constructions. Because this Court has already rejected Armstrong's

indefiniteness argument, and because it finds Optimum's constructions valid, it will adopt those constructions.

Accordingly, "Means for measuring a power draw" is construed as "a device that measures the level of power applied to a compressor motor at a given time." Further, "Means for calculating the motor speed based on the measured driving motor power draw" is construed as "the use of formulas, algorithms, or similar predetermined logic to convert the level of power applied to a compressor motor into an indirect measurement of motor speed."

### III. ORDERS

IT HEREBY IS ORDERED, that the Report and Recommendation (Docket No. 136) is ADOPTED in part and SET ASIDE in part, in accordance with this Decision.

SO ORDERED.

Dated:  October 7, 2013
       Buffalo, New York

                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                         Chief Judge
                                   United States District Court